**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re | ) |
| | ) Case No: 22-80257-PRT |
| Kaitlin Elaine Weaver, | ) |
| Kaitlin Elaine Jarman, | ) Chapter: 7 |
| Debtor(s). | ) |
| | ) Judge: Hon. Paul R. Thomas |

**MOTION FOR**
**RELIEF FROM AUTOMATIC STAY AND ABANDONMENT AND**
<u>**NOTICE OF OPPORTUNITY FOR HEARING**</u>

COMES NOW Mid America Mortgage, Inc., its subsidiaries, affiliates, predecessors in interest, successors and/or assigns ("Movant"), through the undersigned counsel, pursuant to Federal Rules of Bankruptcy Procedure 4001 and 9014, and states as follows in support of its Motion herein:

1. On May 23, 2022, the Debtor, above-named, filed a voluntary petition in Bankruptcy under Title 11, Chapter 7, U.S.C., in the United States Bankruptcy Court, for the Eastern District of Oklahoma.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334 and applicable local rules. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2). Venue is proper in this District under 28 U.S.C. Section 1409(a).

3. The Debtor, Kaitlin Elaine Weaver, and non-filing co-debtor, Brett Weaver, ("Obligor(s)") are indebted to Movant pursuant to a Promissory Note (the "Debt Obligation"). A copy of the Debt Obligation is attached hereto and incorporated herein as <u>Exhibit A</u>. Movant is entitled to enforce the Debt Obligation.

4. As security for repayment of the Debt Obligation the Obligor(s) have pledged certain collateral described as <u>20192 Mockingbird Ln E, Claremore, Oklahoma 74019</u> ("Collateral"). A copy of the proof of perfection of Movant's interest is in the

4216-N-0636

Collateral ("Security Interest") is attached hereto and incorporated herein as <u>Exhibit B</u>.

5.      All rights and remedies under the Debt Obligation and Security Interest have been assigned to the Movant.  To the extent such assignment is not otherwise included in the Debt Obligation or Security Interest, the assignment(s) are attached hereto and incorporated herein as <u>Exhibit C</u> ("Assignment(s)").

6.      Mid America Mortgage, Inc. ("Servicer") services the Debt Obligation secured by the Collateral referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Obligors obtain a discharge, and action is commenced under applicable state law against the Collateral, such action will be conducted in the name of Movant or Movant's successor or assignee. Movant, directly or through an agent, has possession of the Debt Obligation. The Debt Obligation is either payable to Movant or has been duly endorsed and/or assigned in blank or specifically to Movant.

7.      As of May 26, 2022, the outstanding indebtedness owed to Movant less any partial payments or suspense balance is $161,302.20.

8.      As of May 26, 2022, the value of the Collateral is $165,000. The basis for this value is Debtor's <u>Schedule D</u>.

9.      The following chart sets forth the number and amount of contractual payments due pursuant to the terms of the Debt Obligation that have been missed by the Debtor as of May 26, 2022:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 21 | 02/01/2020 | 10/01/2021 | $994.64 | $20,887.44 |
| 7 | 11/01/2021 | 05/01/2022 | $1,217.16 | $8,520.12 |
| Less partial payments (suspense balance): | | | | ($40.01) |
| Total: | | | | $29,367.55 |

Movant's pay log is attached hereto as <u>Exhibit D</u>.

10.     Debtor has stated the intention to <u>surrender</u> the Collateral on <u>Form 108</u>.

11.     The Collateral is burdensome to the Estate and is of inconsequential value and benefit to the Estate. As such, Movant is entitled to an Order directing the Trustee to abandon the Collateral pursuant to 11 U.S.C. §554(b).

12.     Cause exists for relief from the automatic stay under 11 U.S.C. §362(d) for the following reasons:

       a.     <u>11 U.S.C. §362(d)(1)</u> - For cause in that payments required to be made by Obligors to Movant are not being made as required by the Debt Obligation, and Debtor has stated the intention to <u>surrender</u> on <u>Form 108</u>, and Debtor's residential address in this case is different than that of the Collateral.

       b.     <u>11 U.S.C. §362(d)(2)(A) & (B)</u> - Debtor enjoys no equity in the Collateral beyond the debt owed and anticipated costs related to liquidation;  and the Collateral is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order:

1.     Terminating or modifying the stay imposed by 11 U.S.C. 362(a) allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies in and to the Collateral.

2.     For an Order of Abandonment pursuant to 11 U.S.C. §554(b).

3.     For such other relief as the Court deems proper.

## NOTICE OF OPPORTUNITY FOR HEARING

**Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document. If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Eastern District of Oklahoma, P.O. Box 1888, Muskogee, Oklahoma, 74402, no later than 14 days from the date of the filing of this request for relief. You should also serve a file-stamped copy of your response or objection to the undersigned Movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice.**

**The 14 day period includes the three (3) days allowed for mailing provided for in Bankruptcy Rule 9006(f).**

Dated: May 27, 2022

BONIAL & ASSOCIATES, P.C.

/s/ Wesley T. Kozeny
Wesley T. Kozeny / # 31325
609 South Kelly Avenue, Suite A-2
Edmond, Oklahoma 73003
Phone: (405) 285-8100
Fax: (405) 285-8951
OKBK@BonialPC.com
Attorney for Mid America Mortgage, Inc.

4216-N-0636

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Notice of Motion, Motion for Relief including all exhibits and attachments, and this pleading was filed electronically on May 27, 2022, with the United States Bankruptcy Court, and has been served on the parties in interest via e-mail by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List as follows:

**Debtor's Attorney**
Ron D. Brown
Ron D. Brown, Esq.
715 S. Elgin Ave.
Tulsa, OK  74120

**Chapter 7 Trustee**
Charles Greenough
1717 South Boulder, Suite 900
Tulsa, Oklahoma 74119

**US Trustee**
Office of the U.S.Trustee
301 N. Main Street, #500
Wichita, Kansas  67202-4800

I hereby certify that a true and correct copy of the Notice of Motion, Motion for Relief including all exhibits and attachments, and this pleading was filed electronically on May 27, 2022, with the United States Bankruptcy Court, and has been served by Regular United States Mail Service, first class, postage fully pre-paid, to the parties listed below on May 27, 2022.

**All parties set forth on the attached copy of the matrix herein**, and

**Debtor(s)**
Kaitlin Elaine Weaver
41414 East State Highway 51
Coweta, OK 74429-8504

**Co-Debtor(s)**
Brett Weaver
20192 Mockingbird Lane
Claremore, OK 74019-4251

Respectfully Submitted,

/s/ Wesley T. Kozeny
Wesley T. Kozeny

4216-N-0636

Label Matrix for local noticing
1086-7
Case 22-80257
Eastern District of Oklahoma
Muskogee
Fri May 27 11:49:30 CDT 2022

1st Tribal Lending
15301 Spectrum Drive
#405
Addison, TX 75001-6877

AMCOL Systems, Inc.
PO Box 21625
Columbia, SC 29221-1625

Alltran Financial, LP
PO Box 722929
Houston, TX 77272-2929

Ally Bank, c/o AIS Portfolio Services, LP
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Ally Financial
Attn: Bankruptcy
Po Box 380901
Bloomington, MN 55438-0901

Bell Finance
612 W. Will Rogers Blvd
Claremore, OK 74017

Brett Weaver
20192 Mockingbird Lane
Claremore, OK 74019-4251

Ron D Brown
Ron D. Brown, Esq.
715 S. Elgin Ave.
Tulsa, OK 74120-4233

Comenity - Kay Jewelers
PO Box 659728
San Antonio, TX 78265-9728

Communication Federal Credit Union
Attn: Bankruptcy
4141 Nw Expressway, Ste 200
Oklahoma, OK 73116-1683

(p)CONSTAR FINANCIAL SERVICES  LLC
10400 N 25TH AVENUE SUITE 100
PHOENIX AZ 85021-1610

(p)DELIVERY FINANCIAL SERVICES LLC
3710 W GREENWAY RD STE 131
STE 131
PHOENIX AZ 85053-3745

Empire Finance of Claremore
103 E. Patti Page Blvd.
#2
Claremore, OK 74017-8227

Fisher and Fisher
8177 S. Harvard
# 333
Tulsa, OK 74137-1612

Charles Greenough
Charles Greenough, Trustee
2 W Second St Ste 1100
Tulsa, OK 74103-3125

Jana Ferrell & Associates, LLC
4101 Perimeter Center Drive
Suite 210
Oklahoma City, OK 73112-2309

(p)LABORATORY CORPORATION OF AMERICA
ATTN GOVERNMENT AUDITS
PO BOX 2270
BURLINGTON NC 27216-2270

Logicoll, LLC
PO Box 1479
Lombard, IL 60148-8479

Mid America Mortgage Inc.
15301 Spectrum Dr. Ste 405
Addison, TX 75001-6877

Midland Fund
Attn: Bankruptcy
350 Camino De La Reine, Suite 100
San Diego, CA 92108-3007

Office of the United States Trustee
Office of the AUST, Karen Walsh
PO Box 3044
Tulsa, OK 74101-3044

Oklahoma Employment Security Commission
Robert C. Newark, III, Attorney
P.O. Box 53039
Oklahoma City, OK 73152-3039

Rebecca Hunter
Hunter Law Firm, PLLC
PO Box 1107
Coweta, OK 74429-1107

Red Crown Credit Union
19 N Rowe St
Pryor, OK 74361-3834

Robinett, Swartz & Aycock
624 S. Boston Ave.
Suite 900
Tulsa, OK 74119-1238

St John Urgent Care
1923 S Utica Ave
Tulsa, OK 74104-6520

The Mortgage Law Firm, PLLC
421 NW 13th St, Suite 300
Oklahoma City, OK 73103-3743

Tulsa Teachers Federal Credit Union
Attn: Bankruptcy
Po Box 477550
Tulsa, OK 74147-7505

US Security and Exchange Commission
175 W. Jackson Boulevard
Chicago, IL 60604-2615

Wagoner Community Hospital
PO Box 14099
Belfast, ME 04915-4034

Wallace Finance
c/o Associated Credit Services, Inc
115 Flanders Road
Suite 140, PO Box 5171
Westborough, MA 01581-1087

Kaitlin Elaine Weaver
41414 East State Highway 51
Coweta, OK 74429-8504

Wells Fargo Bank NA
Attn: Bankruptcy
1 Home Campus Mac X2303-01a
Des Moines, IA 50328-0001

World Finance
400 North Lynn Riggs Boulevard
Claremore, OK 74017-5618

World Finance Corp/World Acceptance Corp
Attn: Bankruptcy
Po Box 6429
Greenville, SC 29606-6429

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Constar Financial Services LLC
10400 N 25th Ave
Suite 100
Phoenix, AZ 85021

Delivery Finance Service, Llc
Attn: Bankruptcy
3710 W Greenway Road, Suite 131
Scottsdale, AZ 85254

Labcorp
PO Box 2240
Burlington, NC 27216-2240

End of Label Matrix
Mailable recipients     35
Bypassed recipients      0
Total                   35

# NOTE

MIN: ████████████████                    Loan Number: ████████████████

Case Number: 405-120425

APRIL 22, 2019                    TULSA                    OKLAHOMA
[Date]                           [City]                   [State]

20192 MOCKINGBIRD LN E, CLAREMORE, OKLAHOMA 74019
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 133,841.00        (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is MID AMERICA MORTGAGE INC., AN OHIO CORPORATION                                                                .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     5.625   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on       JUNE 1        , 2019       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on     MAY 1, 2049        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 60509, City of Industry, California 91716-0509                                                                          
                                                   or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $  770.46                  .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE  06/14/16                        Page 1 of 4                        DocMagic *eForms*
                                                                             www.docmagic.com

Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    4.000    % of the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE 06/14/16                                        Page 3 of 4

DocMagic *eForms*
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
BRETT WEAVER                    -Borrower         KAITLIN WEAVER                 -Borrower

*[Sign Original Only]*

Universal Loan ID: ███████████████████
Loan Originator: CHERRIE MUZAFFAR, NMLSR ██
Loan Originator Organization: ZFG MORTGAGE LLC, NMLSR I██████████
Loan Originator Organization: MID AMERICA MORTGAGE, INC., NMLSR ID ████████

MULTISTATE FHA FIXED RATE NOTE
USFHA.NTE 06/14/16                        Page 4 of 4                    DocMagic *eForms*
                                                                        www.docmagic.com



2019-005117
04/24/2019 02:13:44 PM Pgs: 15
Fee: $41.00
Jeanne M. Heidlage, County Clerk
Rogers County - State of Oklahoma

After Recording Return To:
MID AMERICA MORTGAGE INC.
2401 SAN PABLO AVENUE STE D
PINOLE, CALIFORNIA 94564
Loan Number: ███████

I hereby certify that I received $ 133.90
and issued receipt No. 2830 thereof
in payment of Mortgage Tax on the within
Mortgage dated this 24th day of April 2019
JASON CARINI, County Treasurer - LJ
Rogers County, Oklahoma

———————————————— [Space Above This Line For Recording Data] ————————————————

FHA Case No: ███████     **MORTGAGE**

MIN: ███████            **MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated    APRIL 22, 2019   , together with all Riders to this document.

**(B) "Borrower"** is BRETT WEAVER AND KAITLIN WEAVER, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is MID AMERICA MORTGAGE INC.

Lender is a        OHIO CORPORATION        organized and existing under the laws of        OHIO
Lender's address is   15301 SPECTRUM DRIVE STE 405, ADDISON, TEXAS 75001

**(E) "Note"** means the promissory note signed by Borrower and dated    APRIL 22, 2019
The Note states that Borrower owes Lender   ONE HUNDRED THIRTY-THREE THOUSAND EIGHT HUNDRED FORTY-ONE AND 00/100         Dollars (U.S. $ 133,841.00      )

OKLAHOMA FHA MORTGAGE - MERS
OKMTGZ2.FHA 09/14/15           Page 1 of 13           *DocMagic eForms*
*www.docmagic.com*

After Recording Return To:
MID AMERICA MORTGAGE INC.
2401 SAN PABLO AVENUE STE D
PINOLE, CALIFORNIA 94564
Loan Number: ████████

—————— [Space Above This Line For Recording Data] ——————

FHA Case No: ████████          # MORTGAGE

**MIN:** ████████                                    **MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A)** **"Security Instrument"** means this document, which is dated          APRIL 22, 2019          , together with all Riders to this document.

**(B)** **"Borrower"** is BRETT WEAVER AND KAITLIN WEAVER, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.

**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D)** **"Lender"** is MID AMERICA MORTGAGE INC.

Lender is a                    OHIO CORPORATION                    organized and existing under the laws of                    OHIO                    .
Lender's address is    15301 SPECTRUM DRIVE STE 405, ADDISON, TEXAS 75001

**(E)** **"Note"** means the promissory note signed by Borrower and dated          APRIL 22, 2019          .
The Note states that Borrower owes Lender    ONE HUNDRED THIRTY-THREE THOUSAND EIGHT HUNDRED FORTY-ONE AND 00/100                    Dollars (U.S. $ 133,841.00          )

OKLAHOMA FHA MORTGAGE - MERS
OKMTGZ2.FHA  09/14/15                    Page 1 of 13                    *DocMagic eForms*
www.docmagic.com

Case 22-80257   Doc 8   Filed 05/27/22   Entered 05/27/22 12:51:32   Desc Main
Document   Page 14 of 30

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 1, 2049

**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Planned Unit Development Rider
☐ Condominium Rider  ☒ Other(s) [specify]    Section 184 Fee Simple Rider

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as

OKLAHOMA FHA MORTGAGE - MERS
OKMTGZ2.FHA  09/14/15                     Page 2 of 13

*DocMagic eForms*
*www.docmagic.com*

Case 22-80257   Doc 8   Filed 05/27/22   Entered 05/27/22 12:51:32   Desc Main
Document   Page 15 of 30

nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

|                         COUNTY                         |  of  |                         ROGERS                         |  :  |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 660008072

which currently has the address of     20192 MOCKINGBIRD LN E

[Street]

CLAREMORE                              , Oklahoma              74019                    ("Property Address"):
       [City]                                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights

OKLAHOMA FHA MORTGAGE - MERS
OKMTGZ2.FHA  09/14/15                          Page 3 of 13                          DocMagic *eForms*
                                                                                    www.docmagic.com

Case 22-80257   Doc 8   Filed 05/27/22   Entered 05/27/22 12:51:32   Desc Main
                        Document   Page 16 of 30

hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree

Case 22-80257   Doc 8   Filed 05/27/22   Entered 05/27/22 12:51:32   Desc Main
Document   Page 17 of 30

in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such

Case 22-80257    Doc 8    Filed 05/27/22    Entered 05/27/22 12:51:32    Desc Main
Document        Page 18 of 30

policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with

Case 22-80257    Doc 8    Filed 05/27/22    Entered 05/27/22 12:51:32    Desc Main
Document    Page 19 of 30

material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

Case 22-80257   Doc 8   Filed 05/27/22   Entered 05/27/22 12:51:32   Desc Main
Document   Page 20 of 30

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Case 22-80257   Doc 8   Filed 05/27/22   Entered 05/27/22 12:51:32   Desc Main
Document   Page 21 of 30

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn

Case 22-80257   Doc 8   Filed 05/27/22   Entered 05/27/22 12:51:32   Desc Main
Document   Page 22 of 30

upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Case 22-80257   Doc 8   Filed 05/27/22   Entered 05/27/22 12:51:32   Desc Main
Document   Page 23 of 30

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower as required by Applicable Law prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 35 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property; and (e) any other information required by Applicable Law. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all costs and expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give notice in the manner required by Applicable Law to Borrower and any other persons prescribed by Applicable Law. Lender shall also publish the notice of sale, and the Property shall be sold, as prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the manner prescribed by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs unless Applicable Law provides otherwise. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Appraisement.** Appraisement of the Property is waived or not waived at Lender's option, which shall be exercised before or at the time judgment is entered in any foreclosure.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $900, as a maximum amount, depending on whether the assumption includes a release of liability.

**26. <u>Notice of Power of Sale. A power of sale has been granted in this Security Instrument. A power of sale may allow the Lender to take the Property and sell it without going to court in a foreclosure action upon default by Borrower under this Security Instrument.</u>**

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

Case 22-80257   Doc 8   Filed 05/27/22   Entered 05/27/22 12:51:32   Desc Main
Document   Page 24 of 30

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BRETT WEAVER                -Borrower

_____ (Seal)
KAITLIN WEAVER              -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

OKLAHOMA FHA MORTGAGE - MERS
OKMTGZ2.FHA  09/14/15                    Page 12 of 13

*DocMagic eForms*
*www.docmagic.com*

Case 22-80257   Doc 3   Filed 05/27/22   Entered 05/27/22 12:51:32   Desc Main
                        Document      Page 25 of 30

———— [Space Below This Line For Acknowledgment] ————

State of OKLAHOMA

County of _Tulsa_

This instrument was acknowledged before me on _4-22-19_
                                                    (date)

by _BRETT WEAVER AND KAITLIN WEAVER,_ husband and wife BW
                                                          KW

_____
                 (name(s) of person(s))

CHERYL VEGA
NOTARY PUBLIC
COMM. EXP.
02-06-2023
NO. ████
STATE OF OKLAHOMA

(Seal, if any)

_____
Signature of notarial officer

_Escrow Officer_
Title and Rank

My commission expires: _____

Loan Originator: CHERRIE MUZAFFAR, NMLSR ID █████
Loan Originator Organization: ZFG MORTGAGE LLC, NMLSR ID █████
Loan Originator Organization: MID AMERICA MORTGAGE, INC., NMLSR ID █████

OKLAHOMA FHA MORTGAGE - MERS
OKMTGZ2.FHA  09/14/15

DocMagic eForms
www.docmagic.com

Loan Number: ███████████

Date: APRIL 22, 2019

Property Address:   20192 MOCKINGBIRD LN E
                    CLAREMORE, OKLAHOMA 74019

# EXHIBIT "A"

## LEGAL DESCRIPTION

Lot 3 in Block 1 of CAREFREE VALLEY EAST II, a Subdivision in Section 8,
Township 21 North, Range 17 East of the I. B. & M., Rogers County, Oklahoma,
according to the recorded Plat thereof.

A.P.N. # : ██████████

**DocMagic** *eForms*
www.docmagic.com

OMB Approval N

(exp. 2/29/2016)

## Section 184 Case #:

# RIDER FOR SECTION 184 MORTGAGE
## FEE SIMPLE PROPERTY ONLY

THIS RIDER FOR SECTION 184 MORTGAGE on FEE SIMPLE PROPERTY ONLY (not Trust or Allotted Land) is made this 22nd day of APRIL, 2019 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to MID AMERICA MORTGAGE INC., AN OHIO CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

20192 MOCKINGBIRD LN E, CLAREMORE, OKLAHOMA 74019

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument. Borrower and Lender further covenant and agree as follows:

1.   If the Security Instrument is assigned to the Secretary of Housing and Urban Development ("Secretary"), any foreclosure proceeding may take place in a tribal court, Federal district court, or other court of competent jurisdiction or non-judicially, if applicable.

2.   This security instrument may be assumed, subject to credit approval by the Lender/HUD. Assumption shall not cause any adjustment of the interest rate.

3.   Any and all foreclosure proceedings pertaining to the Security Instrument and any judgments arising from such proceedings are subject to the provisions of Section 184 of the Housing and Community Development Act of 1992, as amended, or any successor Act, and any regulations promulgated there under, as well as the applicable provisions of the foreclosure laws of the court of competent jurisdiction, if applicable.

STATEMENT OF OCCUPANCY. Borrower(s) will occupy the subject property as a principal residence within sixty (60) days of the Loan closing. In the case of new construction borrower(s) must occupy within 60 days of completion of construction and/or issuance of the certificate of occupancy. Borrower(s) further understand that occupancy is a requirement for the life of the 184 loan and that the home shall not be vacated or converted to rental while encumbered with a 184 mortgage. Borrower(s) further confirm and understand and agree that failure to occupy the property as a principal residence as provided above, shall constitute a default under the terms and conditions of the loan, and upon the occurrence of such default the whole sum of principal and interest shall immediately become due and payable at the option of the holder of the note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants in this Rider for a Section 184 Mortgage for the Fee Simple Property.

Borrower/Date BRETT WEAVER

Borrower/Date KAITLIN WEAVER

RIDER FOR SECTION 184 MORTGAGE FEE SIMPLE PROPERTY ONLY
Form HUD-50121 (2/14/2013)
R184.MSC 07/31/18

DocMagic eForms
www.docmagic.com

Case 22-80257   Doc 8   Filed 05/27/22   Entered 05/27/22 12:51:32   Desc Main
Document   Page 28 of 30

EXHIBIT - C



PREPARED BY AND WHEN RECORDED MAIL TO:
The Mortgage Law Firm, PLLC
421 NW 13th Street, Suite 300
Oklahoma City, OK 73103

TS N ▮▮▮▮                                    MIN ▮▮▮▮
                                             MERS Telephone No. 1-888-679-6377

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc., as Mortgagee, as nominee for
Mid America Mortgage, Inc. (herein "Assignor"), whose address is PO Box 2026, Flint, MI 48501-2026,
its successors and assigns, does hereby grant, assign, transfer, and convey unto Mid America Mortgage,
Inc., all of its right, title and interest in the below described mortgage.

| | |
|---|---|
| Original Lender: | Mid America Mortgage, Inc. |
| Made By: | Brett Weaver and Kaitlin Weaver, husband and wife |
| Date of Security Instrument: | April 22, 2019 |
| Original Loan Amount: | $133,841.00 |
| Recording Information: | Rogers County, OK, on April 24, 2019, in Doc. No. 2019-005117. |

Property Address: 20192 Mockingbird Ln E, Claremore, OK 74019
Property Legal Description:

> **Lot 3 in Block 1 of CAREFREE VALLEY EAST II, a Subdivision in Section 8,
> Township 21 North, Range 17 East of the I. B. & M., Rogers County, Oklahoma,
> according to the recorded Plat thereof.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
March 17, 2022 .

                                        **Mortgage Electronic Registration Systems, Inc., as
                                        Mortgagee, as nominee for Mid America
                                        Mortgage, Inc., its successors and assigns**

                                        By: _____ Jeffrey Bode _____
                                        Title:   Vice President
                                        Oklahoma should be signed by a Vice President

State of   Texas            }SS
County of  Dallas

On March 17, 2022  before me  Lorena Aguirre                    ,
a Notary Public, personally appeared ___ Jeffrey Bode _____
who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to
the within instrument and acknowledged to me that he/she executed the same in his/her authorized
capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which
the person acted, executed the instrument.

WITNESS my hand and official seal

_____                    (This area for Official Notary Seal)
Notary Public

┌─────────────────────────────┐
│         LORENA AGUIRRE      │
│  Notary Public, State of Texas │
│  Comm. Expires 02-02-2026   │
│         Notary ID ▮▮▮       │
└─────────────────────────────┘

# EXHIBIT - D

| Creditor: | Mid America Mortgage, Inc |
|---|---|
| Debtor: | Kaitlin Elaine Weaver |
| Case No.: | 22-80257 |
| Loan No.: | XXXXXX7187 |
| Our File No.: | 4216-N-0636 |
| Collateral: | 20192 Mockingbird Ln E, Claremore, Oklahoma 74019 |

**PAYMENTS RECEIVED**

Loan Status as of: 5/26/2022
Initial Due Date: 2/1/2020

| Date Received | Amount Received | Due Date | Amount Due | NSF/Late Charges/Other | Paid Over/Short | Description |
|---|---|---|---|---|---|---|
| | | 2/1/2020 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 3/1/2020 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 4/1/2020 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 5/1/2020 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 6/1/2020 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 7/1/2020 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 8/1/2020 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 9/1/2020 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 10/1/2020 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 11/1/2020 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 12/1/2020 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 1/1/2021 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 2/1/2021 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 3/1/2021 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 4/1/2021 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 5/1/2021 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 6/1/2021 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 7/1/2021 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 8/1/2021 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 9/1/2021 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 10/1/2021 | $ 994.64 | | $ (994.64) | Payment Accrued |
| | | 11/1/2021 | $ 1,217.16 | | $ (1,217.16) | Payment Accrued |
| | | 12/1/2021 | $ 1,217.16 | | $ (1,217.16) | Payment Accrued |
| | | 1/1/2022 | $ 1,217.16 | | $ (1,217.16) | Payment Accrued |
| | | 2/1/2022 | $ 1,217.16 | | $ (1,217.16) | Payment Accrued |
| | | 3/1/2022 | $ 1,217.16 | | $ (1,217.16) | Payment Accrued |
| | | 4/1/2022 | $ 1,217.16 | | $ (1,217.16) | Payment Accrued |
| | | 5/1/2022 | $ 1,217.16 | | $ (1,217.16) | Payment Accrued |
| 5/26/2022 | | | | $ 40.01 | $ 40.01 | Suspense at Petition |
| **Total:** | **$ -** | | **$ 29,407.56** | | **$ (29,367.55)** | |

| Delinquent Payments | | Days Delinquent: | | 816 | | |
|---|---|---|---|---|---|---|
| Month Due | Paid Due | Escrow Due | Stip Due | | Total Due | |
| 2/1/2020 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 3/1/2020 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 4/1/2020 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 5/1/2020 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 6/1/2020 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 7/1/2020 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 8/1/2020 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 9/1/2020 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 10/1/2020 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 11/1/2020 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 12/1/2020 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 1/1/2021 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 2/1/2021 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 3/1/2021 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 4/1/2021 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 5/1/2021 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 6/1/2021 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 7/1/2021 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 8/1/2021 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 9/1/2021 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 10/1/2021 | $ 770.46 | $ 224.18 | $ - | | $ 994.64 | |
| 11/1/2021 | $ 770.46 | $ 446.70 | $ - | | $ 1,217.16 | |
| 12/1/2021 | $ 770.46 | $ 446.70 | $ - | | $ 1,217.16 | |
| 1/1/2022 | $ 770.46 | $ 446.70 | $ - | | $ 1,217.16 | |
| 2/1/2022 | $ 770.46 | $ 446.70 | $ - | | $ 1,217.16 | |
| 3/1/2022 | $ 770.46 | $ 446.70 | $ - | | $ 1,217.16 | |
| 4/1/2022 | $ 770.46 | $ 446.70 | $ - | | $ 1,217.16 | |
| 5/1/2022 | $ 770.46 | $ 446.70 | $ - | | $ 1,217.16 | |
| Delinquency | | | | | $ 29,407.56 | |
| Less Suspense | | | | | $ 40.01 | |
| Total Delinquency | | | | | $ 29,367.55 | |